Matter of Columbus Monument Corp. v City of Syracuse (2023 NY Slip Op 04000)

Matter of Columbus Monument Corp. v City of Syracuse

2023 NY Slip Op 04000

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, BANNISTER, AND MONTOUR, JJ.

309 CA 22-00380

[*1]IN THE MATTER OF COLUMBUS MONUMENT CORPORATION, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO THE COLUMBUS MONUMENT ASSOCIATION, NICHOLAS J. PIRRO, BOB GARDINO, JOANNE GARDINO, JAMES ALBANESE, MIKE ALBANESE, KATIE ALBANESE, MARY EMILY ALIBRANDI, SILVIO ASCENZO, LAUREN ASCENZO, BRENDA WENDY LEE BOUSEFELD, ANDREA BUCCI, ANGELO CHIODO, MARGARET CHIODO, JOAN CHRISTENSEN, GABRIEL DIGENOVA, PETER DIGENOVA, GENE FISCH, ANDRE GRASSO, KEVIN KANE, SHANNON KENNEDY, BILLE KINNE, JOE LEPIANE, TED MASSEY, RANDY POTTER, JOSEPH RUSSO, GERARADA SCUDERI, CHARLES TREMPER, AND JOHN VIGLIOTTI, PETITIONERS-PLAINTIFFS-RESPONDENTS,
v
CITY OF SYRACUSE, RESPONDENT-DEFENDANT-APPELLANT, AND BEN WALSH, INDIVIDUALLY AND AS MAYOR OF THE CITY OF SYRACUSE, RESPONDENT-DEFENDANT. 

SUSAN R. KATZOFF, CORPORATION COUNSEL, SYRACUSE, HANCOCK ESTABROOK, LLP (JOHN G. POWERS OF COUNSEL), FOR RESPONDENT-DEFENDANT-APPELLANT.
ANTHONY J. PIETRAFESA, SYRACUSE, ANTHONY F. ALOI, CICERO, JOHN A. DEFRANCISCO, SANIBEL, FLORIDA, AND FRANCIS J. VAVONESE, BRIDGEPORT, FOR PETITIONERS-PLAINTIFFS-RESPONDENTS.
INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION, ROCKVILLE, MARYLAND (ERICH R. EISELT OF COUNSEL), FOR INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION, AMICUS CURIAE. 

 Appeal from a judgment (denominated order) of the Supreme Court, Onondaga County (Gerard J. Neri, J.), entered March 11, 2022, in a proceeding pursuant to CPLR article 78 and declaratory judgment action. The judgment, insofar as appealed from, denied in part the motion of respondents-defendants to dismiss the amended petition-complaint. 
It is hereby ORDERED that the judgment insofar as appealed from is unanimously reversed on the law without costs, the motion insofar as it seeks dismissal of the amended petition-complaint is granted, and the amended petition-complaint is dismissed in its entirety.
Memorandum: In this hybrid CPLR article 78 proceeding and declaratory judgment action, respondent-defendant City of Syracuse (City) appeals from a judgment that, inter alia, denied in part the motion of the City and respondent-defendant Ben Walsh, individually and as Mayor of the City of Syracuse (Mayor) (collectively, respondents), to dismiss the amended petition-complaint (amended petition) or for judgment on the merits and granted those parts of the amended petition seeking relief related to the City's alleged duty to maintain the Christopher Columbus Monument (Monument) in its present form and location in St. Mary's Circle in downtown Syracuse. We reverse the judgment insofar as appealed from.
The Monument was given to the City in 1934 and placed in St. Mary's Circle, where it has remained to date. In the early 1990s, the City undertook a restoration of the Monument, fountain, and surrounding plaza in St. Mary's Circle, assisted in part by a grant from the New York State Office of Parks, Recreation and Historic Preservation (Parks). The 1990 contract between the City and Parks governing the terms of the grant (Project Agreement) required the City to execute "an agreement conveying an easement or preservation restriction to [Parks] and such others as [Parks] deems appropriate." The City and State subsequently executed and filed a Preservation Covenant in satisfaction of that obligation. The restoration of St. Mary's Circle was also partially funded by a donation from the Columbus Monument Memorial Association (Association) that was accepted by the City in 1991.
In October 2020, following a series of community conversations facilitated by a non-profit organization and the solicitation of recommendations from an action committee organized by the Mayor regarding the presence of the Monument in St. Mary's Circle, the Mayor announced an intention to move forward with the steps required by local and state law to relocate the Monument from St. Mary's Circle to another site. The City and Parks subsequently executed and filed an agreement terminating the Preservation Covenant.
Petitioners thereafter commenced the instant hybrid proceeding. Respondents moved to, inter alia, dismiss the amended petition on the grounds that the claims were premature because no final determination had been made and that petitioners lacked standing to bring the claims in the amended petition. Supreme Court denied the motion in part and granted the amended petition insofar as it sought relief pursuant to CPLR 7803 (1) and (3) enjoining the City from doing anything other than conserving and maintaining the Monument and insofar as it sought declarations that the City had no legal right to alter or remove the Monument, that the Monument had not exceeded its useful life, that the Preservation Covenant had not been validly terminated, and that petitioners were third-party beneficiaries of the City's obligation to preserve and maintain the Monument for its useful life.
We agree with the City that petitioners' claims for relief pursuant to CPLR 7803 (1) and (3) and for declarations that the City lacks the legal right to alter or move the Monument and that any such alteration or movement would violate both the City's duty to protect the Monument and section 8-111 of the Charter of the City of Syracuse—1960 (City Charter) are premature and must be dismissed because they are not ripe for judicial review (see Matter of Agoglia v Benepe, 84 AD3d 1072, 1076 [2d Dept 2011]; see generally Matter of State of New York v Calhoun, 106 AD3d 1470, 1472 [4th Dept 2013]). A proceeding under CPLR article 78 generally "shall not be used to challenge a determination" that is "not final or can be adequately reviewed by appeal . . . to some other body or officer" (CPLR 7801 [1]). Similarly, "a court should decline to apply the discretionary relief of declaratory judgment . . . to administrative determinations unless these arise in the context of a controversy ripe for judicial resolution" (Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 518 [1986], cert denied 479 US 985 [1986] [internal quotation marks omitted]). For the purpose of both a CPLR article 78 proceeding and a declaratory judgment action, "[t]he concept of finality requires an examination of the completeness of the administrative action and a pragmatic evaluation of whether the decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury" (id. at 519 [internal quotation marks omitted]; see Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34 [2005], rearg denied 5 NY3d 824 [2005]; see generally Matter of Goodyear v New York State Dept. of Health, 163 AD3d 1427, 1428-1429 [4th Dept 2018], lv denied 32 NY3d 914 [2019]; Matter of Committee to Save Beacon Theater v City of New York, 146 AD2d 397, 402-404 [1st Dept 1989]). Further, in order for the administrative action to be considered final, it must be the case that the alleged injury from the administrative action "may not be prevented or significantly ameliorated by further administrative action or by [*2]steps available to the complaining party" (Best Payphones, Inc., 5 NY3d at 34; see Church of St. Paul & St. Andrew, 67 NY2d at 520).
Contrary to the court's determination, the December 7, 2020 letter from an Assistant Corporation Counsel for the City to Parks does not constitute a final administrative determination regarding the future of the Monument. In that letter, the Assistant Corporation Counsel requested an opinion from Parks whether the Preservation Covenant—which had a stated term of " '23 years or the useful life of the improvement, made with funds provided . . . whichever is
longer' "—was still in effect and what regulatory role, if any, Parks might still have in the City's decision. The letter itself thus acknowledges that the City had not yet made a final determination and that further action with respect to St. Mary's Circle and the Monument might involve Parks or might be precluded by the Preservation Covenant. Further, in support of their motion, respondents submitted evidence establishing that multiple administrative steps would be required before any action could be taken with respect to the Monument. Those steps include a requirement that the City obtain a certificate of appropriateness from the Syracuse Landmark Preservation Board with respect to any proposed material changes to St. Mary's Circle and the Monument, in the absence of which "finality is lacking" (Committee to Save Beacon Theater, 146 AD2d at 403; see City of Syracuse Zoning Rules and Regulations, part C, § VII, art 6 [A]). We note that, in determining whether to grant such a certificate, the Syracuse Landmark Preservation Board is obligated to consider the very issues raised by petitioners in this proceeding, i.e., the historical and architectural value and significance of the property to be altered (see City of Syracuse Zoning Rules and Regulations, part C, § VII, art 6 [A]).
Contrary to the further conclusion of the court, there is nothing in the plain language of section 8-111 of the City Charter that precludes the City from altering or moving the Monument such that petitioners' "right to relief [under CPLR article 78] is 'clear' and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion" (Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88, 96 [1981]). Instead, the issue whether the City would be acting in bad faith or wasting public resources in violation of section 8-111 of the City Charter if it were to alter the Monument or move it from St. Mary's Circle is not "so clear as not to admit [any] reasonable doubt or controversy" (Matter of Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v Bartlett, 40 NY2d 571, 574 [1976]; see generally Second Class Cities Law § 22; Montecalvo v City of Utica, 170 Misc 2d 107, 110-112 [Sup Ct, Oneida County 1996], affd 233 AD2d 960 [4th Dept 1996], appeal dismissed 89 NY2d 938 [1997]). Thus, this is not a matter in which CPLR article 78 relief may lie in the absence of a final administrative determination (see Hamptons Hosp. & Med. Ctr., 52 NY2d at 96).
The remaining claims for declaratory relief granted by the court, i.e., that "the Monument has not exceeded its useful life," that the "Termination of Protective Covenant filed . . . on March 22, 2021 is null and void," and that "[p]etitioners are third-party beneficiaries of the City's obligation to preserve and maintain the Monument for its useful life," relate to petitioners' alleged rights as third-party beneficiaries of the Project Agreement or the Preservation Covenant. A declaratory judgment cause of action is "an appropriate vehicle for settling justiciable disputes as to contract rights and obligations" (Kalisch-Jarcho, Inc. v City of New York, 72 NY2d 727, 731 [1988]; see Burrstone Energy Ctr., LLC v Faxton-St. Luke's Healthcare, 162 AD3d 1554, 1554-1555 [4th Dept 2018]). Nevertheless, we agree with the City that petitioners are not third-party beneficiaries of either contract (see generally Katz v DePaola, 211 AD3d 1020, 1021 [2d Dept 2022]; Logan-Baldwin v L.S.M. Gen. Contrs., Inc., 94 AD3d 1466, 1468 [4th Dept 2012]) and that they therefore lack standing to enforce the terms of those agreements or to challenge the termination of the Preservation Covenant by the City and Parks (see Mendel v Henry Phipps Plaza W., Inc., 6 NY3d 783, 786-787 [2006]; Matter of Coalition for Cobbs Hill v City of Rochester, 194 AD3d 1428, 1435-1436 [4th Dept 2021]).
Although "[g]overnment contracts often confer benefits to the public at large[, that fact alone] is not . . . a sufficient basis in itself to infer the government's intention to make any particular member of the public a third party beneficiary, entitled to sue on such contract" (Grunewald v Metropolitan Museum of Art, 125 AD3d 438, 439 [1st Dept 2015], lv denied 27 NY3d 907 [2016]; see generally Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 38, 44 [1985]). Instead, " 'an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the [*3]particular contracts' " (Dormitory Auth. of the State of N.Y. v Samson Constr. Co., 30 NY3d 704, 710 [2018]; see Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 655 [1976]; see also Nature Conservancy v Congel, 253 AD2d 248, 253 [4th Dept 1999]). Such intent is shown "when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was an intent to permit enforcement by the third party" (Dormitory Auth. of the State of N.Y., 30 NY3d at 710 [internal quotation marks omitted]). Neither situation is present here. Parks clearly has an enforcement right with respect to both the Project Agreement and the Preservation Covenant, and therefore it cannot be concluded that petitioners are the only parties who can recover under those contracts (see id.). Further, although the court relied on the status of certain petitioners as donors to the restoration project, nothing in the plain language of the Project Agreement, which was executed in 1990, specifies or anticipates how the City would appropriate or raise its share of the funds for the restoration. Instead, with respect to donations that contract states only that "[m]atching funds must be raised in full by June 30, 1990." The funds raised by the Association, to which three individual petitioners contributed, were not donated until October 1991, and the City ordinance accepting that donation contains no language from which it can be inferred that, in accepting the donation, the City was recognizing an enforcement right on the part of the Association or that the donation was made subject to any specific conditions (see id.; cf. Smithers v St. Luke's-Roosevelt Hosp. Ctr., 281 AD2d 127, 139 [1st Dept 2001]).
Further, the Project Agreement expressly obligated the City to execute "an agreement conveying an easement or preservation restriction to [Parks] and such others as [Parks] deems appropriate" with no reference to any other known or unknown donor to the restoration project. Thus, the language of the Project Agreement belies the conclusion that the restrictive covenant obligation was included in the Project Agreement for the specific benefit of any petitioner (cf. Nature Conservancy, 253 AD2d at 253). The Preservation Covenant itself also contains no language from which it can be inferred that petitioners were among its intended beneficiaries (see Wheeler v Del Duca, 151 AD3d 1005, 1006 [2d Dept 2017]). Thus, even assuming, arguendo, that petitioner-plaintiff Columbus Monument Corporation is a legal successor-in-interest to the Association, we conclude that petitioners lack standing to seek declaratory relief with respect to the Project Agreement, the Preservation Covenant, or the termination of the Preservation Covenant.
In light of our determination, we do not address the City's remaining contentions.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court